1            IN THE UNITED STATES DISTRICT COURT

2            FOR THE MIDDLE DISTRICT OF ALABAMA

3                      NORTHERN DIVISION

4

5   UNITED STATES OF AMERICA

6        vs.                    CASE NO.:  2:06cr165-WKW

7   DANIEL RYAN STRICKLAND,

8          Defendant.

9

10

11                    * * * * * * * * * *

12                    SENTENCING PROCEEDINGS

13                    * * * * * * * * * *

14          BEFORE THE HONORABLE W. KEITH WATKINS, UNITED STATES

15  DISTRICT JUDGE, at Montgomery, Alabama, on Thursday, May 15,

16  2008, commencing at 9:15 a.m.

17  APPEARANCES:

18

19  FOR THE GOVERNMENT:      Mr. Kent B. Brunson
                            Assistant United States Attorney
                            OFFICE OF THE UNITED STATES ATTORNEY
20                          131 Clayton Street
                            Montgomery, Alabama  36104

21

22  FOR THE DEFENDANT:       Mr. Kevin L. Butler, Attorney at Law
                            FEDERAL DEFENDERS
                            MIDDLE DISTRICT OF ALABAMA
23                          201 Monroe Street, Suite 407
                            Montgomery, Alabama  36104

24

25              Proceedings reported stenographically;
                   transcript produced by computer.

```
 1        (The following proceedings were heard before the Honorable
 2         W. Keith Watkins, United States District Judge, at
 3         Montgomery, Alabama, on Thursday, May 15, 2008, commencing
 4         at 9:15 a.m.:)
 5     (Call to Order of the Court)
 6          THE COURT:  Good morning.
 7          MR. BUTLER:  Good morning, Your Honor.
 8          THE COURT:  All right.  We're here for the sentencing
 9   in the case of the United States versus Daniel Ryan Strickland,
10   Case Number 07-144.  Take appearance for the government, please.
11          MR. BRUNSON:  Kent Brunson on behalf of the United
12   States, Your Honor.
13          THE COURT:  Good morning, Mr. Brunson.
14          And for the defendant?
15          MR. BUTLER:  Good morning, Your Honor.  Kevin Butler on
16   behalf of Mr. Strickland.
17          THE COURT:  Good morning.
18          Good morning, Mr. Strickland.
19          THE DEFENDANT:  Good morning, Mr. Watkins.
20          THE COURT:  It appears that a plea agreement pursuant
21   to 11(c)(1)(C) has been reached in the case.  Would the
22   government please state the terms of the plea agreement.
23          MR. BRUNSON:  Yes, Your Honor.  This was a one-count
24   indictment.  And Mr. Strickland agreed to plead to the
25   indictment, and he did agree to waive appeal and collateral
```

1    attack.  The United States agreed to the full three levels for

2    acceptance of responsibility.  We have filed the third-point

3    motion.  And Mr. Strickland did timely enter his plea, and we

4    think he's deserving of the full three levels.  We also have

5    recommended or agreed to recommend a sentence at the low end of

6    the advisory guideline range.  And I notice from the calculation

7    prepared by the probation officer she's gone along in her

8    recommendation to the Court with a sentence at the low end of

9    the guideline range.

10           THE COURT:  Which in this case is the statutory

11   maximum.

12           MR. BRUNSON:  Yes, Your Honor.

13           THE COURT:  Okay.

14           MR. BRUNSON:  And the other important provision of the

15   plea agreement is that we agree not to oppose the defendant's

16   motion for a departure pursuant to 5K2.13 for diminished

17   capacity if the Court determines that that is an appropriate

18   departure.

19           THE COURT:  Mr. Butler --

20           MR. BRUNSON:  We didn't agree with it, but we just

21   agreed not to oppose it.

22           THE COURT:  Not to oppose it.  Mr. Butler, is that your

23   understanding of the plea agreement?

24           MR. BUTLER:  Your Honor, I think the last statement by

25   government counsel -- that is, we don't agree with it, but we

1  agree not to oppose it -- could be argued to be in conflict with

2  the plea agreement.  However, it may be a moot point, given some

3  other issues presented in the plea agreement.  But Your Honor --

4          MR. BRUNSON:  Your Honor, let me say this.  And I hate

5  to interrupt Mr. Butler.  I may have misspoken.  It was not

6  intended to say that we don't agree with it.  What we're saying

7  is in -- in the plea agreement, we didn't say we agreed that he

8  had --

9          MR. BUTLER:  Oh, I see.

10          MR. BRUNSON:  -- a diminished capacity.  We don't agree

11  with that, but we agree not to oppose the request for diminished

12  capacity.  And I didn't mean to imply to the Court that we're

13  not agreeing that there is -- we're not agreeing that there is

14  not a diminished capacity.  We just didn't put that in the plea

15  agreement that there was an agreement.  We're just not opposing

16  it.

17          THE COURT:  Okay.  I'm probably going to have that

18  sentence you just gave typed up to study.  But let me just read

19  it --

20          MR. BRUNSON:  I know it's confusing, Your Honor.

21          THE COURT:  Let me read it straight from the plea

22  agreement.

23          MR. BUTLER:  Thank you, Your Honor.

24          THE COURT:  Paragraph 1B.  The government further

25  agrees to not oppose a downward departure under U.S.S.G. Section

1    5K2.13 for diminished capacity if it is deemed appropriate by

2    the Court.

3              MR. BRUNSON:  That was the intent of the plea

4    agreement.  And I said too much, and I'm going to be quiet.

5              THE COURT:  That's fine.  Now, then, is that your

6    understanding of the plea agreement, Mr. Butler?

7              MR. BUTLER:  Yes, Your Honor.

8              THE COURT:  And has the government complied, as far as

9    you know, with its side of the plea agreement?

10             MR. BUTLER:  Yes, Your Honor.

11             THE COURT:  And has the defendant complied,

12   Mr. Brunson?

13             MR. BRUNSON:  Yes, Your Honor.

14             THE COURT:  All right.  The Court accepts the plea

15   agreement, and the motion for the one extra point is granted.

16             Now, then, Mr. Strickland, have you and your attorney

17   had an opportunity to review the presentence report?

18             THE DEFENDANT:  Yes, sir, I have.

19             THE COURT:  And Mr. Butler, I noted a couple of

20   objections.  Are any of those objections not resolved?

21             MR. BUTLER:  Yes, Your Honor.  The only -- only one is

22   essentially unresolved.  It is still our position that

23   Mr. Strickland is entitled to a downward departure under

24   5K2.13.  We advised probation that we thought that that was

25   appropriate.  It is their position that he is not entitled to

 1  that reduction, and I would like to make arguments for that.

 2          THE COURT:  Okay.  As far as the factual statements in

 3  the presentence report, do you have any objection to those?

 4          MR. BUTLER:  No, Your Honor.  Those have been resolved.

 5          THE COURT:  Okay.  So what you want to argue is the

 6  diminished capacity motion.

 7          MR. BUTLER:  Yes, Your Honor.

 8          THE COURT:  All right.

 9          MR. BUTLER:  Your Honor --

10          THE COURT:  Let me -- let me work my way through the

11  findings first, and then I'll take your motion.

12          Does the government have any objections to the

13  presentence report?

14          MR. BRUNSON:  No, Your Honor.

15          THE COURT:  All right.  In compliance with Justice

16  Breyer's majority opinion in *Booker*, this Court, while not bound

17  to apply the guidelines, has consulted them and has taken them

18  into account on the issue of the appropriate range of sentence

19  to be imposed in this case.  There being no objections, the

20  Court adopts the factual statements contained in the presentence

21  report with specific findings that the offense level is 26 after

22  the enhancements and the credit for acceptance of

23  responsibility, the criminal history category is VI, the

24  guideline range for imprisonment is from 120 to 150 months, the

25  supervised release period is from two years to three years, and

1    the fine range is from 12,500 to $125,000.  The Court notes that

2    the guideline range -- the bottom end of the guideline range is

3    the top end of the statutory maximum.

4          Now, then, do you have a motion to argue, Mr. Butler?

5          MR. BUTLER:  Yes, Your Honor.  And I guess we accept

6    the factual representations contained in the PSI except as to

7    the extent that those representations, according to the

8    probation office, don't merit a downward departure under

9    5K2.13.  Your Honor, I've been trying to figure out the best way

10   to articulate this.

11         THE COURT:  Just say it.

12         MR. BUTLER:  But that's what I -- Mr. Strickland has

13   been in Springfield for approximately a year and a half.  The

14   reason that he was in Springfield is that during the course of

15   my representation, he has attempted to harm himself, I believe

16   kill himself, approximately six times.  While a juvenile, he

17   believed -- I believe he attempted to either hang himself or

18   kill himself as well.  Mr. Strickland is an articulate, bright

19   individual.  That, nevertheless, does not mean that he does not

20   have some form of diminished capacity and/or suffered from that

21   diminished capacity at the time that he committed the offense.

22         It is true that at the time that he committed the

23   offense he may have used drugs as well; however, it has been my

24   experience -- and I think this report echoes that fact -- that

25   it is a form of self-medication.  By that I mean individuals who

1    suffer from manic depression, individuals who suffer from

2    extreme depression often use drugs in order to address those

3    feelings.  It's a chicken-and-the-egg-type argument.  I believe

4    probation's position is because he used drugs, and some other

5    factors which we'll address, he's not entitled to a downward

6    departure.  It is our position, however -- and I think all the

7    facts and circumstances support this -- that he used drugs to

8    address this severe depression that he suffers from.  That,

9    coupled with -- that led, ultimately, to this offense.  And he

10   was committing this offense while under the effects of that

11   depression.

12           The guidelines read, Your Honor, that significantly

13   reduced mental capacity means an individual has an impaired

14   ability to understand the wrongfulness of the behavior

15   compromising (sic) the offense.  I'm not -- we're not here

16   arguing that he has that, Your Honor.  I believe even when he

17   committed this offense he understood the conduct was wrong.  But

18   then it goes on, or to exercise the power of reason.  Your

19   Honor, I think Mr. Strickland's conduct at the time of this

20   offense, over the last year and a half, as a juvenile, even as a

21   juvenile, clearly shows that when suffering from depression, his

22   clinical depression, he has a significantly reduced power to

23   exercise the power of reason.  He goes to extreme lengths to

24   address what he believes to be crises in his life.

25           At the time of this offense, he had -- I believe you

1    have two children?

2         THE DEFENDANT:  Yes, sir.

3         MR. BUTLER:  He has -- he had two children, he had no

4    source of income, and he was struggling.  In his mind -- and his

5    inability to support himself and his family spiraled in his mind

6    to the point that he believed to address what were his personal

7    failings towards his family, this action was the appropriate

8    course of conduct.  That form of reasoning is illogical,

9    inappropriate, and criminal; but it does show that he had at the

10   time of the offense the inability to exercise or significantly

11   reduced ability to exercise the power of reason.

12        Additionally -- and I think what's happened over the

13   last year and a half, his juvenile record, and this conduct

14   supports the second prong as well.  And if the Court finds that

15   either of these are applicable -- that is, the A or what I'm

16   about to read, the B, a downward departure can be applied.

17   Control behavior the defendant knows is wrongful.  Like I said

18   before, Mr. Strickland knew what he was doing was wrong.  We're

19   not sitting here saying otherwise.  Had he not, this case

20   probably would have gone to trial on an insanity defense.  No,

21   he knew what he was doing was wrong.  But he -- when he gets

22   into his manic states, he cannot control his behavior, given the

23   fact and supported by the fact that when he -- he's tried to

24   kill himself six times during the course of my representation.

25        Additionally, I think of note, Your Honor -- and I'm

1   not trying to be unduly graphic, but I think it's important for

2   the Court to note that the first time he self-injured himself at

3   jail, I believe he used a plastic knife to try to cut down to

4   his artery.  The type of discipline and mental state it takes to

5   do that with a plastic knife is what I would -- is not normal,

6   yet that's what he did.  The second -- after, though, he was

7   taken to the hospital and healed, I believe he again tried to

8   use a utensil.  They took utensils from him.  He then, I

9   believe, sharpened one of his fingernails, cut open the sutures

10  and then, using his own fingernail, cut down to the artery.  He

11  actually hit the artery using his own fingernail.  My point --

12  again, what this shows is that this is an individual who when in

13  this manic state of depression does not exercise appropriate

14  reason and cannot control his behavior.  Look at what he's doing

15  to himself in these circumstances.

16          Your Honor, this Court deemed it appropriate to keep

17  Mr. Strickland in Springfield for the remaining year and a half

18  with my -- at my request for a reason; that is, because

19  Mr. Strickland, though a wonderful young man, though a bright

20  young man and an articulate young man, has extreme emotional

21  problems that were manifesting themselves at the time of this

22  offense and have throughout this case.

23          For those reasons, Your Honor, we believe that the

24  initial threshold for diminished capacity has been met.  We

25  understand that the guidelines go further.  It states that even

1  if the Court finds that the individual has significantly reduced

2  mental capacity at the time of the offense, the departure is not

3  warranted if the reduced capacity was caused by a voluntary use

4  of drugs.  Again, this goes back to my first point.  Yes, he did

5  use drugs at or -- on or about the time of this offense, but the

6  use of drugs was not what motivated this offense.  He had

7  already put in motion in his mind the need to commit this

8  offense because of the depression he was going through.  This is

9  further supported by the fact that while completely no longer

10  using drugs and in our -- in the marshal's custody, in the

11  depressive state that he's been in, he's exercised poor judgment

12  and reason in trying to hurt himself in the ways I described

13  earlier.  So though he used drugs, the drugs were not the cause

14  of the offense.  And so number one is not applicable.

15           Number two, the facts and circumstance of the

16  defendant's offense indicate a need to protect the public

17  because the offense involved actual violence or serious threat

18  of violence.  No actual violence was involved.  Was there a

19  serious threat of violence?  I believe that there was not.  Your

20  Honor, when -- if Your Honor has been given copies -- I'm not

21  sure if it's included in the PSI.  I reviewed the discovery.

22  The teller, when Mr. Strickland approached her and stated -- the

23  bank -- excuse me -- the postal worker and stated give me your

24  money, essentially, she thought he was joking.  She didn't think

25  it was serious.  In fact, I think she may have even used that

1  comment to Mr. Strickland, said, are you kidding or are you --

2  are you serious?  At that point, Mr. Strickland said, I think,

3  an expletive and walked out of the post office.  The crime was

4  committed.

5          MR. BRUNSON:  Excuse me, Your Honor.  I don't think

6  that Mr. Butler meant that.  I think he meant the bank where he

7  was to begin with.

8          MR. BUTLER:  No.  This offense is the post office.

9          MR. BRUNSON:  He -- yes.  But he had done that at the

10  bank --

11          MR. BUTLER:  Oh, I'm sorry.

12          MR. BRUNSON:  -- and left the bank.

13          THE DEFENDANT:  The post office.  The one in Florida,

14  the bank in Florida --

15      (Off-the-record discussion)

16          MR. BUTLER:  No, Your Honor.  It is our position that

17  that happened at the post office.

18          MR. BRUNSON:  Okay.

19          MR. BUTLER:  But my point being, Your Honor -- and what

20  the government is bringing up and I understand it's -- it may

21  bring up later is that this offense followed an event in

22  Florida, a robbery of a bank.  But what I'm talking about is the

23  conduct here, whether it involved a serious threat of violence.

24  And the postal clerk did not think he was serious, did not turn

25  over anything; and in fact Mr. Strickland, when he saw the fact

1  that the teller wasn't taking him seriously, turned around and

2  walked out.  So it is our position that it did not involve

3  violence or serious threat of violence.

4       The third thing that would exclude the use of a

5  diminished capacity departure would be if the defendant's

6  criminal history indicates a need to incarcerate the defendant

7  to protect the public.  Your Honor, I'm not going to insult the

8  Court's intelligence and say that Mr. Strickland does not have

9  an extensive criminal history.  But what I would like to

10 underscore is the fact that the offenses listed in the criminal

11 history occurred between the ages of 12, when he was 12 years

12 old, to 17.  There is one harassing communication at the age of

13 21.

14       My point is he was -- he was obviously a difficult

15 child.  But from at least my point of view and based on my

16 experience, what this screams to me is an individual who has

17 some serious issues that nobody is dealing with.  What they are

18 doing is they are locking him up, letting him out.  He gets out,

19 acts out again based on his depression and some other emotional

20 issues that have never been addressed, and repeats this conduct

21 over and over and over again.  It's a cry for attention from a

22 12-year-old, from a minor, that nobody is addressing, my point

23 being that though the criminal history is extensive, I do not

24 believe it's reflective of a criminal history of an adult.  This

25 is a criminal history of a troubled boy who is not being treated

1   for emotional problems which are now manifesting themselves as

2   an adult.

3         So it's our position that the criminal history does not

4   indicate a need to incarcerate the defendant to protect the

5   public because through counseling, that element can be

6   addressed.  The defendant has been convicted of an offense

7   charged under certain codes of the codes; and that, I don't

8   believe, is applicable in this case.  So number four is not

9   applicable.

10        Your Honor, in a nutshell, as to the diminished

11  capacity argument, it is our position that a downward departure

12  is warranted.  We would ask for a downward departure of two

13  levels.  Mr. Strickland isn't here asking the Court to let him

14  go or not punish him.  He knows he's going to be punished.  But

15  a downward departure of two levels would, in our opinion, be

16  appropriate, given the Court's need to also punish but also

17  address the fact that this conduct occurred while he was under

18  the influence of a significantly reduced mental illness.  The

19  corresponding range there would be 100 to 125 months, Your

20  Honor.

21        THE COURT:  Mr. Brunson?

22        MR. BRUNSON:  Your Honor, I bound myself by the plea

23  agreement not to file an objection or state an objection to his

24  motion for diminished capacity.  That's all I understand is

25  before the Court on Mr. Butler's presentation, so I cannot say

1    anything.

2            THE COURT:  Okay.  Well, there was no written motion

3    filed, but the Court had anticipated this motion and discussion.

4            MR. BUTLER:  Your Honor, and before we proceed -- and I

5    apologize for that, because I've actually gotten confused

6    procedurally on this issue.  In the event that a party does

7    intend to file a request for a downward departure, making the

8    objection to probation -- the Court would prefer that in

9    addition to that, a motion be filed?  Because I will do that in

10   the future.

11           THE COURT:  I would always prefer a motion filed and

12   briefing, as appropriate --

13           MR. BUTLER:  Yes, Your Honor.  I --

14           THE COURT:  -- prior.  Because otherwise, I have to sit

15   up here and shoot from the hip --

16           MR. BUTLER:  Understood.  Understood.

17           THE COURT:  -- which I'm fine to do.  But I have

18   considered this, because I have spent a good bit of time on

19   Mr. Strickland's case not just in preparation for sentencing;

20   but I believe we had a videoconference about a year ago, as I

21   recall, with him in Springfield.

22           Is that right, Mr. Strickland?

23           THE DEFENDANT:  I believe so.

24           THE COURT:  Do you remember that?

25           THE DEFENDANT:  I remember the one in February.  I

1    think we had one this year.

2            THE COURT:  Was it this year?  I don't --

3            MR. BUTLER:  Your Honor, we had one with Judge Coody,

4    but we also had one with Your Honor as well.

5            THE COURT:  Yes.  Well, Mr. Strickland, I'm going to --

6    well, first of all, before I talk about the motion and the

7    overall circumstances, do you have anything that you want to say

8    before I pronounce sentence on you?

9            Or Mr. Butler, anything further?

10           MR. BUTLER:  Yes.  Thank you, Your Honor.  I have one

11   additional thing that I'd like to discuss.  Mr. Strickland has

12   been in United States Marshal's custody for the last two years

13   in large part because of efforts on my behalf to address matters

14   which I thought were of import to the Court; that is, his mental

15   state, his competence to proceed, and these issues.  He,

16   however, is technically in state custody; that is, he was

17   brought here on a writ of habeas corpus out of Florida.

18           It is our position that after the Court makes its

19   ultimate findings as to the appropriate sentence, we would ask

20   that the sentence imposed in this case run concurrent to the

21   pending criminal case in Leon County, Tallahassee, Florida,

22   essentially.  The case number is 2006 CF 2176.  This Court does

23   have the authority, as outlined in *United States versus*

24   *McDaniel*, to run a sentence concurrent with a state sentence

25   that has not yet been imposed.  The Eleventh Circuit has ruled

1    that that is -- that it is -- the Court is authorized to do so,

2    number one.

3         Number two, the case that's pending in Florida arises

4    from the same set of circumstances that essentially arose --

5    that brought about this case; so it is, in my opinion, somewhat

6    relevant conduct.  The reason that's important is under the

7    guidelines, Chapter 5C1.3, I believe, in the event a sentence is

8    imposed by another jurisdiction for conduct similar -- for

9    relevant conduct to this case, this Court -- it is recommended

10   that this Court run this sentence concurrent with that.  And

11   what happened there was a bank robbery; that is, he robbed a

12   bank down in Tallahassee, Florida.  After that, he came up here

13   and he robbed -- attempted to rob the post office here.  These

14   were all part of the same series of events.  And it was

15   unarmed.  Your Honor, it is our position that imposing this

16   sentence to run consecutive or remaining silent as to the issue,

17   I believe, running consecutive would essentially call for a

18   sentence that is greater than necessary.

19        The alternative, Your Honor, we would ask that the

20   Court consider under 18 United States Code 3553 reducing the

21   sentence in this case by the time that he has been in federal

22   custody; i.e., if the Court imposes -- believes a sentence of

23   ten years is appropriate, that that sentence be reduced by the

24   amount of time that he has now been here in federal custody.

25   That would be our second request.

```
 1          Your Honor, those -- that is my remaining request.
 2   Mr. -- one moment.
 3      (Brief pause)
 4          MR. BUTLER:  Your Honor, that's my last request.
 5   Mr. Strickland would like to address you.
 6          THE COURT:  Go ahead, Mr. Strickland.
 7          THE DEFENDANT:  Sir, I understand that my actions were
 8   wrong and -- but the two years I've been locked up on this case,
 9   sir, I've had two children that was -- well, one that was born
10   while I was incarcerated and the other one was two weeks prior
11   to me catching these cases.  And being the two years I've been
12   locked up, you know, I reflected a lot, you know.  But I want to
13   be a father to my kids, you know.  That's it.  Sorry.
14          THE COURT:  Okay.  Jakki, let me see you just a minute.
15      (Bench conference held off the record)
16          THE COURT:  All right.  As I understand it, I have
17   three -- I have two motions with one two-part motion pending.
18   One is your diminished capacity motion.  Two is to run
19   concurrent or the alternative of two is to reduce his time in
20   federal custody, give him credit, in effect, for his time in
21   federal custody even though he's been under a state writ.
22          MR. BUTLER:  That's correct, Your Honor.
23          THE COURT:  All right.  Mr. Strickland, as I said, I
24   have considered your case, really, over the last year.  And I
25   want to commend your attorney for one or more trips out to where
```

1   you were in Springfield.  He has done everything in his power to

2   help you.

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Including this morning.  The real lesson

5   here, though, is that the only person who can help you is you,

6   because these -- these suicide -- six attempted suicides have

7   occurred while he's been representing you.  In other words,

8   that's recent.  That doesn't give me, as a judge, any comfort

9   that you would not be a threat, maybe, to your children in the

10  short-term.  I note that you had 18 convictions by the time you

11  were 21.  And, of course, you have some serious charges pending

12  in Florida which involved a high-speed chase through the state

13  capital complex with pedestrians around.  You have 12 other

14  arrests.  Nine of your arrests have been assaults and batteries,

15  six of those on law enforcement, three arson convictions, grand

16  theft, running from the law, threatening FBI agents, threatening

17  the governor of Florida, threatening the president of the United

18  States.

19          MR. BUTLER:  Your Honor, before you go any further, I

20  know the Court asked me to conclude.  I just -- it's our

21  position that all of those things are attempts at getting

22  attention.

23          THE COURT:  I understand.  I wrote down troubled boy.

24  I wrote down juvenile.  And I know a lot of them are juvenile;

25  nevertheless, we are where we are.

1           MR. BUTLER:  Yes, Your Honor.

2           THE COURT:  And Mr. Strickland, you have been living in

3    a frame that was built by somebody else.  I don't know if you've

4    ever done any carpentry.  You know, the metaphor there would be

5    that you're living in a house that somebody else framed up; and

6    frankly, it's a sorry house.  It's a broken house.  You can

7    think of it as a picture frame.  You're living in a picture

8    frame that's broken.  It won't work.  It won't hang.  It won't

9    stay on the wall.  And when I said that the reality is that the

10   only person that can help you is you, in spite of Mr. Butler's

11   attempts, in spite of the people's attempts at Springfield, you

12   know, you've come to a time in your life -- what are you, 25

13   now?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  -- when you need to reframe your life in a

16   frame that you've built, a new frame, a frame that will work.

17          And I cannot take the chance that you're going to get

18   out soon and hurt somebody or yourself.  And I can't take the

19   chance that you will do only state custody in Florida and miss

20   the opportunities that are available in federal custody.  So I'm

21   going to deny the concurrent motion because a judge in Florida

22   could say we want to keep you and we're going to put you in the

23   worst hellhole in Florida and you're not going to get any

24   therapy, and you'll come out worse.  So that motion is denied

25   for that reason.  If the state court wants to help you out in

1  the state sentence and defer your custody to the federal

2  government, which I think is the best thing for you and what

3  maybe you'd want to talk to your attorney in Florida about --

4  and Mr. Butler, I'm sure, will discuss with your attorney in

5  Florida -- then that's the best thing for you.

6          Whether you get better or live this hell of a life that

7  you've been living is going to be up to you.  You're going to

8  have to let somebody help you, and I figure I'm part of that

9  process.  I have considered 5K2.13 and the fine arguments of

10 your attorney, which are not opposed by the government.

11 Nevertheless, Mr. Strickland, under the facts and circumstances,

12 including recent efforts by yourself to harm yourself within

13 Mr. Butler's representation of you and because of your criminal

14 history, I'm going to deny the motion for a downward departure

15 for diminished capacity.  I consider the facts and circumstances

16 of this offense to be serious.  And if you tag along the

17 relevant conduct of what you did in Tallahassee after you left

18 here just the same day or the next day, that there was an actual

19 violence or serious threat of violence entailed in the car

20 chase -- but even if that is just relevant conduct and not part

21 of this offense, under the third exception your criminal history

22 indicates a need to incarcerate you to protect the public and I

23 would say to protect yourself and I would say for you to get

24 treatment, if you have decided to let somebody help you reframe

25 your life.  Do you understand what I'm talking about, about

1   reframing your life?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  So the sentence will now be stated, but you

4   and your attorney will have a final chance to make legal

5   objections before the sentence is imposed.

6          Pursuant to the Sentencing Reform Act of 1984, it is

7   the judgment of the Court that you are hereby committed to the

8   custody of the Federal Bureau of Prisons to be imprisoned for a

9   total term of 120 months.  Having considered the guideline

10  computations and having taken them under advisement, the Court

11  finds that the sentence imposed is sufficient but not greater

12  than necessary to comply with the statutory purposes of

13  sentencing.

14         Furthermore, the sentence is reasonable when

15  considering the following 3553(a) factors.  First, the nature

16  and circumstances of the offense and the history and

17  characteristics of the defendant, as I have described.  Second,

18  to reflect the seriousness of the offense and to promote respect

19  for the law, which is one of those frames of your new framework,

20  respect for yourself, respect for other people, which translates

21  into respect for the law, and to provide just punishment for the

22  offense.  Third, to provide adequate deterrence to criminal

23  conduct.  And fourth is a key factor here, is to protect the

24  public from further crimes of the defendant and I would say to

25  protect yourself from yourself until you can get help and decide

1    to let people help you.  Next, to provide the defendant with

2    needed educational or vocational training, medical care, or

3    other correctional treatment in the most effective manner.

4         The Court recommends that you be designated to a

5    facility where intensive drug treatment and mental health

6    treatment is available.

7         Upon release, you will be placed on supervised release

8    for a term of three years.  Within 72 hours of your release from

9    custody, you shall report to the probation office in the

10   district to which you are released.  While on supervised

11   release, you will comply with the mandatory and standard

12   conditions of supervised release on file with this Court.

13        The Court also orders the following special conditions,

14   that you shall participate in a program approved by the United

15   States Probation Office for substance abuse, which may include

16   testing to determine whether you have reverted to the use of

17   drugs.  You shall also participate in a mental health treatment

18   program approved by the United States Probation Office.  You

19   shall contribute to the cost of any treatment based on your

20   ability to pay and the availability of third-party payments.

21   You shall cooperate in the collection of DNA, and you will

22   submit to a search of your person, residence, office, or vehicle

23   pursuant to the search policy of this Court.

24        You are also ordered to pay a special assessment fee of

25   $100 to the United States District Court Clerk, which is due

1   immediately.  Based on your inability to pay, the Court waives

2   imposition of a fine.  And the Court finds that there is no

3   identifiable victim who suffered a financial loss as a result of

4   this offense, so there is no restitution order.

5        You shall stand committed upon release to federal

6   custody, thereby making this sentence consecutive to any

7   sentence you are now serving or may be serving in the future.

8   And again, I express my intent that you serve as much time as

9   possible and to get the help you can in the federal system

10  because the help is available there.

11       Now, are there any objections to the sentence or to the

12  manner in which the Court pronounced it?  Mr. Butler?

13       MR. BUTLER:  Your Honor, may I have one moment?

14       THE COURT:  You may.

15    (Brief pause)

16       MR. BUTLER:  Other than what's been previously stated

17  on the record, Your Honor, nothing further.

18       THE COURT:  The sentence, therefore, is ordered imposed

19  as stated.  I didn't allow the government to say if the

20  government has any objections.

21       MR. BRUNSON:  No objections, Your Honor.

22       THE COURT:  All right.  And that includes no objections

23  to the calculations, Mr. Brunson?

24       MR. BRUNSON:  That is correct, Your Honor.

25       THE COURT:  And Mr. Butler, the same?  No objections to

1  the calculations?

2         MR. BUTLER:  Other than what's been previously stated,

3  no.

4         THE COURT:  All right.  Mr. Strickland, pursuant to the

5  plea agreement, you've waived your right to appeal.  I mean --

6  yes, you have waived your right to appeal.

7         Is there anything further from the government?

8         MR. BRUNSON:  No, Your Honor.

9         THE COURT:  Anything further from you, Mr. Butler?

10        MR. BUTLER:  No, Your Honor.

11        THE COURT:  Mr. Strickland, you are remanded to the

12 custody of the United States Marshal.  And I sincerely wish the

13 best for you and that you'll get the help that you need.  Thank

14 you.

15        The next case is Mr. Willie Daniel.  If you-all will --

16        MR. BUTLER:  Your Honor, I'm sorry.  May be excused?

17 I'm just getting my stuff.

18        THE COURT:  Yes.  I want to see you just a minute,

19 please.

20     (Bench conference held off the record)

21     (Proceedings concluded at 10:02 a.m.)

22                  * * * * * * * * * *

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2              I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.

4              This 10th day of June, 2008.

5

6                                        /s/ Risa L. Entrekin
                                         Registered Diplomate Reporter
7                                        Certified Realtime Reporter
                                         Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25